## DETROIT EDISON CO. v. WYATT COAL CO.

(Circuit Court of Appeals, Fourth Circuit. November 6, 1923.)

No. 2133.

1. **Contracts ⬤━138(3)—Purchaser of coal held violator of Lever Act, and not entitled to recover overpayment.**

Where during the war, in violation of Lever Act, § 25 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115⅛q), purchaser paid in excess of contract price for coal received, the seller and buyer were in pari delicto, and the purchaser could not recover overpayment made.

2. **Action ⬤━4—Law will not afford one of two wrongdoers relief against the other.**

The law will not lend itself to afford one of two wrongdoers relief against the other, but will leave them in the position in which they were found.

3. **Payment ⬤━87(2)—Money paid under compulsion recoverable only where emergency exists.**

To authorize recovery back of money paid under compulsion there must exist such conditions as to constitute an emergency, making it necessary to submit to the unreasonable and unjust demand imposed.

4. **Payment ⬤━87(2)—Compulsion held not shown in pleadings in action to recover overpayment.**

In an action to recover overpayments for coal in excess of contract price, allegations that plaintiff a public service corporation, because engaged in furnishing its services to manufactories engaged in war work for the government, was compelled by the nature of its business, and the

then condition of the coal market to pay the additional sum demanded, did not show such compulsion as would warrant recovery, it not being averred that defendant knew of the character of plaintiff's business, or did any act or brought any pressure on plaintiff.

5. Payment ⬅️82(1)—Voluntary payments not recovered back.
Payments knowingly and voluntarily made, in the absence of fraud, mistake, or duress, cannot be recovered back.

In Error to the District Court of the United States for the Southern District of West Virginia, at Huntington; George W. McClintic, Judge.

Action by the Detroit Edison Company against the Wyatt Coal Company. Judgment for defendant, and plaintiff brings error. Affirmed.

James V. Oxtoby, of Detroit, Mich. (Ernest E. Winters, Jr., of Huntington, W. Va., and Oxtoby, Robison & Hull, of Detroit, Mich., on the brief), for plaintiff in error.

Fred O. Blue, of Charleston, W. Va. (Poffenbarger, Blue & Dayton, of Charleston, W. Va., on the brief), for defendant in error.

Before WADDILL, Circuit Judge, and WATKINS and WEBB, District Judges.

WADDILL, Circuit Judge. This is an action of assumpsit instituted by the plaintiff in error, hereinafter called plaintiff, against the defendant in error, hereinafter called defendant, to recover the amount of certain payments on account of coal contracted to be sold by the defendant to the plaintiff, in excess of the price agreed upon, and which amount plaintiff insists was unlawfully and improperly exacted by the defendant. The jurisdiction of the District Court is based on diverse citizenship of the parties, the plaintiff being a corporation resident and a citizen of the state of New York, doing business in the state of Michigan, and the defendant a corporation of the state of West Virginia, resident and a citizen and doing business at the city of Charleston, within the Southern district of that state.

The cause of action grows out of a certain contract entered into between the plaintiff and the defendant, dated 10th of February, 1917, whereby the plaintiff bought and the defendant contracted to sell 250,000 tons of mine run coal, to be shipped between the 1st of July, 1917, and June 30, 1918, in equal monthly installments from the Berlin mines, on Cabin creek, Kanawha county, and the Main Island and Mc-Gregor mines, in Logan county, W. Va., at the price of $2.25 per ton, f. o. b. at mines. The contract price was by consent of parties, afterwards changed to $2.50 per ton, prior to the shipment of any coal thereunder. On the 1st of April, 1918, this contract was, with the consent of the plaintiff, assigned by the defendant to the Main Island Creek Coal Company. During the months of November and December, 1917, and from January to May, 1918, inclusive, the defendant shipped to the plaintiff 117,211 tons, charging $2.85 per ton, instead of $2.50, that is, 35 cents per ton extra, and aggregating $334,052.19, the excess price being $41,024.18, which the plaintiff paid, and it is to recover this last named sum that this suit is prosecuted.

The plaintiff in its declaration avers that by virtue of the act of Congress of the 10th of August, 1917, familiarly known as the Lever Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115⅛e et seq.), the President of the United States was authorized, and did by several orders and proclamations between the passage of the act and October, 1917, fix and prescribe the price at which coal of the class in question should be sold, and under which for the months aforesaid, viz. from November, 1917, to May, 1918, inclusive, the price was fixed at $2.85 per ton, or 35 cents a ton in excess of the price named in the contract aforesaid, which the defendant illegally charged the plaintiff, and the latter was forced to pay.

Plaintiff further avers that the provisions of the Lever Act did not apply to or affect contracts made in good faith prior to the publication of established prices of coal under the act, and that by section 25 the defendant was inhibited from demanding or receiving a greater sum than that specified in the contract and agreed upon by the parties, to wit, the 35 cents a ton over and above the price agreed upon, and which the plaintiff was forced to pay. Plaintiff further avers that on account of the character of the business in which it was then and is now engaged, viz. that of a public service corporation, supplying heat and electric light and power in the city of Detroit, Mich., and surrounding territory, and because at the time it was engaged in furnishing its services to manufactories engaged in war work for the government, it was imperative that the plaintiff should receive the coal, which the defendant was then under contract with it to deliver, and plaintiff was accordingly compelled by the nature of its business, the necessity and importance of keeping its plant in operation, and the then condition of the coal market to pay to the defendant the additional sum demanded by the defendant to be paid to it for said coal, and submit to the defendant's unlawful exaction of said additional 35 cents a ton, and did pay the same upon all coal delivered under said contract after November 1, 1917.

The defendant appeared, and demurred generally to the plaintiff's declaration, raising the question of the right of the plaintiff to recover under the contract in suit, and especially averred that the plaintiff and the defendant were in pari delicto in respect to any alleged violation of the contract, thereby disentitling the plaintiff to prosecute its action, and, further, that the payments in question were voluntarily made by the plaintiff, and not recoverable. Plaintiff joined in the demurrer, and, upon argument and hearing thereon, the court sustained the same, and the plaintiff, declining to amend its declaration, entered judgment in favor of the defendant, from which action this writ of error is sued out.

These questions are presented for the consideration of the court, and will be disposed of in the order named, viz.: The validity and effect of the provision of section 25 of the Lever Act (section 3115⅛q), and its bearing upon the right of recovery herein; whether payments made under the circumstances set forth in the declaration can be recovered back, for the reasons therein stated; and whether said payments were not voluntarily made.

First. The plaintiff in argument in effect concedes that, if by the provisions of the act in respect to demanding and receiving the excess of 35 cents per ton for the coal in question over the agreed price the parties thereto were in pari delicto, then no recovery can be had.

Plaintiff insists its act in no sense disentitled it to recover the amount illegally exacted from and paid by it; that the same was charged in direct violation of the letter and spirit of the law, and that said section 25 expressly inhibited the defendant from making the charge; that the law was enacted for the protection of the plaintiff and persons similarly situated; and that the plaintiff was not in pari delicto with the defendant with respect to the payment of the excess charge. The section is as follows:

"Sec. 25. * * * Whoever shall, with knowledge that the prices of any such commodity have been fixed as herein provided, ask, demand, or receive a higher price, or whoever shall, with knowledge that the regulations have been prescribed as herein provided, violate or refuse to conform to any of the same, shall, upon conviction, be punished by fine of not more than $5,000, or by imprisonment for not more than two years or both. Each independent transaction shall constitute a separate offense." 40 Stat. 276, 286.

This section, in plain terms, prohibits the defendant from asking, demanding, or receiving a higher price than that specified in the contract and agreed to by the parties. But it does not follow that this provision was enacted only for the benefit of persons buying coal, or that one in the plaintiff's position was not affected by the section.

[1, 2] The purpose of the legislation, and the regulations issued thereunder, was primarily intended as a means of national defense and safety, and to aid in the prosecution of the war by the equalization, as far as possible, of the distribution of coal to all industries and users alike, and to stabilize the production of whatever was needed for governmental or war purposes, and to prevent extortions upon the public during the then existing conflict. The defendant, in contravention of this legislation, charged the plaintiff, and the latter paid, more than the contract price agreed upon, which was the price recognized in the act. This infraction of the law could only have been made effective and accomplished by the co-operation of the plaintiff with the defendant, though apparently against its own interest. The plaintiff was familiar with all the facts, and with full knowledge allowed the defendant to charge, and paid to it, 35 cents a ton more than required by the contract between them, and by so doing it failed to conform to the law and regulations prescribed by Congress for the fair and equitable distribution of the coal supply.

Conceding that the plaintiff's conduct in the transaction was less reprehensible and less flagrant than that of the defendant, still, without the plaintiff's co-operation with the defendant, the latter's effort would have proven abortive, and there would have been no actual and effective violation of the law. What the plaintiff did becomes of especial interest as bearing upon its legal right to maintain this action to recover back money paid by it by reason of its acquiescence in and co-operation with the defendant, in the assertion of the excessive price for the coal in violation of the Lever Act, and as to which, from our

viewpoint, the parties are in pari delicto. It is true the plaintiff paid out money which it need not have done; but that does not avail it, since in this class of cases the law will not lend itself to afford one of two wrongdoers relief against the other. On the contrary, it will leave them in the position in which they are found.

The plaintiff, upon its own showing, knowingly paid money upon a claim illegally asserted against it which it need not and should not have paid, and by so doing placed itself at the mercy of the defendant in a suit for the return or recovery of the same. Myers v. Meinrath, 101 Mass. 366, 3 Am. Rep. 368; Atwood v. Fisk, 101 Mass. 363, 100 Am. Dec. 124; Rock v. Mathews, 35 W. Va. 534, 14 S. E. 137, 14 L. R. A. 508; 2 Beach Mod. Con. § 1443.

[3] Second. Assuming the existence of such conditions as to enable the plaintiff to recover, notwithstanding its own participation in bringing about the situation complained of, still, in the circumstances of this case, no recovery could be had of the money alleged to have been wrongfully paid. The law affords relief only in cases of payments illegally and improperly exacted, or coerced under duress or compulsion.

"It is well settled that illegal payments, coerced under duress or compulsion, may be recovered, provided the compulsion furnished the motive for the payments sought to be recovered, and proceeds from the person against whom the action is brought." 21 R. C. L. p. 145, notes 13, 14; and 15.

In cases to recover back money paid under compulsion, there must exist such conditions as to constitute a sure-enough emergency, making it necessary to submit to the unreasonable and unjust demand imposed; for instance, an immediate and urgent necessity for such payment to secure the release of one's person or property from detention, or to avoid an immediate seizure of one's person or property.

The federal decisions are clear and positive on this subject. In Railway Co. v. Commissioner, 98 U. S. 543, 25 L. Ed. 196, the Supreme Court approvingly quoted from Wabaunsee County Com'rs v. Walker, 8 Kan. 431:

"Where a party pays an illegal demand with a full knowledge of all the facts which render such demand illegal, without an immediate and urgent necessity therefor, or unless to release his person or property from detention, or to prevent an immediate seizure of his person or property, such payment must be deemed voluntary and cannot be recovered back. And the fact that the party at the time of making the payment files a written protest does not make the payment involuntary,"

and declared that to be the correct statement of the rule at Common Law.

The Supreme Court, in the later case of Little v. Bowers, 134 U. S. 547, 10 Sup. Ct. 620, 33 L. Ed. 1016, again approvingly quoted this language in full, and in the still later cases of Chesebrough v. United States, 192 U. S. 253, 24 Sup. Ct. 262, 48 L. Ed. 432, and United States v. New York & Cuba Mail S. S. Co., 200 U. S. 448, 26 Sup. Ct. 327, 50 L. Ed. 569, the rule was reaffirmed. Others recent federal decisions of the Circuit Court of Appeals for the Sixth Circuit, Lazarus Liquor Co. v. Kessler & Co., 269 Fed. 520, and Benton Harbor-St. J. G. & F. Co. v. Middle West Coal Co., 271 Fed. 216, the last named

arising under this very act of Congress, strongly sustain the views herein taken. In 21 R. C. L. pp. 145, 146, and 147, will also be found a full citation of authorities in support of these conclusions.

[4] A careful consideration of the reasons stated in the declaration why the plaintiff paid the money sued for—viz. that it was imperative that the coal contracted for should be received on account of the nature of its business, and the necessity and importance of keeping its generating plant in operation, and in the then condition of the coal market, that it submitted to the defendant's unlawful demand and exaction of the additional 35 cents a ton, and paid the same—would seem to make it clear that recovery cannot be sustained in the light of the authorities cited. No necessity within the contemplation of law is averred why such exaction should have been assented to. No protest was made against the alleged excess charge. It is not averred that the defendant knew of the character of the plaintiff's services, or had knowledge of its customers, or knew the work in which it was engaged. There is no charge that the defendant knew of any of the alleged circumstances that caused the plaintiff to make the extra payments, that the same was ever brought to its attention, or that the defendant was responsible for a single one of them; nor is it charged that the defendant did any act or exercised any power or brought any pressure on the plaintiff in connection with the making of said extra charge, or that the defendant threatened to exercise any power it possessed, tending to force the plaintiff to submit to its illegal demands. It is not charged that the defendant either refused or made any threat to discontinue the shipment of coal. There is an utter lack of averment of such immediate and urgent necessity in making the payment as the law requires to enable the recovery of it, or that the compulsion either furnished the motive for the payment or proceeded from the defendant, against whom the recovery is sought.

[5] Third. A careful examination of the declaration, which gives plaintiff's account of why the sums alleged to have been illegally and improperly exacted of it were paid, convinces us that the averments fail to take the case out of the class of voluntary payments for which no recovery can be had. The authorities are entirely clear that payments knowingly and voluntarily made, in the absence of fraud, mistake, or duress, cannot be recovered back. This is so elementary that decisions need scarcely be cited to support the same. Lamborn v. County Commissioners, 97 U. S. 184, 185, 24 L. Ed. 926; Knudsen-Ferguson Fruit Co. v. Chicago, St. P., M. & O. Ry. Co., 149 Fed. 973, 79 C. C. A. 483; E. H. Taylor, Jr., & Sons, Inc., v. First Nat. Bank of Aurora, Ind., 212 Fed. 898, 129 C. C. A. 418; Haigh v. United States Bldg. L. & L. Ass'n, 19 W. Va. 792; Beard v. Beard, 25 W. Va. 486, 52 Am. Rep. 219; Mayor of Richmond v. Judah, 5 Leigh (Va.) 305; Lester v. Mayor & City Council of Baltimore, 29 Md. 415, 96 Am. Dec. 542, and note; Devereux v. Rochester German Insurance Co., 98 N. C. 6, 3 S. E. 639; Shuck v. Interstate B. & L. Ass'n, 63 S. C. 134, 41 S. E. 28; 21 R. C. L. pp. 141, 142, 143; 30 Cyc. 1298, and notes.

We have given careful consideration to the able argument of counsel for the plaintiff in error, and to the authorities cited in support of their

contention, but are convinced that they do not require a conclusion in this case contrary to that announced. Special reference should perhaps be made to the recent decision of the Supreme Court of the state of Wisconsin, Badger Coal & Coke Co. v. Sterling Midland Coal Co. (Wis.) 192 N. W. 461, the same having arisen under the act of Congress involved here. As we view that case, the excessive charge in question was, without the knowledge of the plaintiff, fraudulently made by anticipating the date of the shipment, in order to avoid the provisions of the act of Congress. While the court may have felt that the Lever Act was intended to protect one in the situation of the plaintiff in such circumstances, we have no idea that court would have held that the act could be availed of as a protection to one party to a contract, as is the plaintiff here, or that a recovery could be had upon the averments of the present case.

The decision of the District Court sustaining the demurrer and entering judgment against the plaintiff is affirmed.

Affirmed.