## HADLEY v. FARMERS NAT. BANK OF OKLAHOMA CITY.

No. 15853.    Opinion Filed June 28, 1927.

(Syllabus.)

1. **Payment—Voluntary Payment by Customer to Collecting Bank of Protested Cashier's Check.**

Where a customer of a bank presents a check to his bank for collection, said check being drawn on an out of town bank by a third party, and the collecting bank mails the check direct to the bank on which it is drawn, receives a cashier's check in return, credits the customer's account with the amount of the cashier's check, transmits the cashier's check through regular channels for collection, and the cashier's check is returned protested, and the bank asked his customer whether the protested cashier's check should be charged to his account or whether the customer will pay it, and the customer, with full knowledge of all the facts, does pay the amount of the cashier's check without protest or objection, such payment constitutes a voluntary payment and not a payment under compulsion or coercion.

2. **Same—No Right to Recover Voluntary Payment Made with Knowledge of Facts.**

Money voluntarily paid, with full knowledge of all the facts under which it was demanded, cannot be recovered back upon the ground that payment was made under a misapprehension of the legal rights and obligations of the party paying.

Commissioner's Opinion, Division No. 2.

Error from District Court, Oklahoma County; T. G. Chambers, Judge.

Action by Roscoe E. Hadley against the Farmers National Bank of Oklahoma City, Okla. Judgment for defendant, and plaintiff appeals. Affirmed.

Edward Hirsh and Leon S. Hirsh, for plaintiff in error.

Keaton, Wells & Johnston, for defendant in error.

JEFFREY, C. Plaintiff in error, Roscoe E. Hadley, who was plaintiff below, being indebted to one J. R. Cottingham and being the holder and owner of a bank check drawn

by C. G. Watts in favor of Hadley on the First State Bank of Wagoner, Okla.. for the sum of $855, indorsed in blank and delivered the check to his creditor, Cottingham. Cottingham gave Hadley credit for the amount of the check, and being a customer of the defendant in error, the Farmers National Bank of Oklahoma City, through his agent, McCracken, deposited the check with said bank for collection. The Farmers National Bank sent the check by mail direct to the First State Bank of Wagoner, and received in return a cashier's check for the amount, gave Cottingham's account credit for the amount, and transmitted the cashier's check through the Federal Reserve Bank of Oklahoma City in due course for collection. While the cashier's check was being cleared by the Federal Reserve Bank, the First State Bank of Wagoner was declared insolvent and closed by the Bank Commissioner. The cashier's check was later protested and returned to the Farmers National Bank unpaid, which bank notified Cottingham of the return of the check and asked Cottingham whether the check should be charged to his account or whether Cottingham would give his check to cover the amount. Cottingham was notified of the return of the cashier's check only a few days before the 1st of January, 1923. A few days later, at the request of Cottingham, Hadley gave his personal check on another Oklahoma City bank payable to the Farmers National Bank for $857, delivered the same to Cottingham, which was in turn delivered to the Farmers National Bank by Cottingham, advising that the check was given to take up the protested cashier's check. The bank accepted the check and delivered the cashier's check to Cottingham, who delivered it to Hadley. And on October 8, 1923, after the commencement of this suit, Cottingham executed and delivered to Hadley a written assignment of such claims and demands as Cottingham had, or might have, against said bank by reason of said transaction. Hadley commenced this action for money had and received on July 28, 1923, to recover from the Farmers National Bank the amount of the original check and protest fees. Upon the issues joined a jury was waived and the cause was tried to the court, who rendered judgment therein that plaintiff recover nothing and defendant recover its costs. from which judgment plaintiff prosecutes this appeal.

In support of his petition in error for a reversal of the judgment of the lower court, plaintiff in error urges four propositions, to wit:

"1. When a bank receives a check for collection it must return the check or the money; and if the collecting bank surrenders the check for anything but legal tender, it is liable to the depositor for the amount of the check.

"2. In the absence of agreement to the contrary a bank to which paper is intrusted for collection becomes the owner of the proceeds of the paper; and when proper credit is given to the depositor, the relation of debtor and creditor is created between the parties.

"3. When a bank credits the proceeds of a collection item to its depositor, wipes out the relation of principal and agent, and establishes a relation of debtor and creditor, all prior liabilities of the bank, growing out of the collection transaction, become merged into the debtor and creditor relation and the suit against the bank for the amount of the collection item is properly had under the common counts for money had and received rather than for negligence in performing the duties of collecting agent.

"4. Where, under a contract of collection between depositor and banker, into which enters an established custom, a relationship of principal and agent becomes one of creditor and debtor, rights accruing under the latter may not legally be abrogated by a reversion to the former at the whim of the banker."

Each of these propositions, we think, embodies a sound principle of law and is reasonably well supported by the authorities. If the transaction between the parties had closed with the crediting of the cashier's check to the account of Cottingham, that is to say, if Hadley had not given his check to the bank in payment of the protested item, and if Cottingham had not delivered the check and received the cashier's check in the manner in which it was done, the above principles of law would be especially applicable and perhaps control a determination of the issues.

In view of all the facts, the only questions for a correct determination of the issues by this court are: Did Hadley and Cottingham voluntarily pay the bank the amount of the protested cashier's check and protest fees? And if so, is Hadley entitled to recover back this amount?

Did Cottingham act voluntarily in taking up the cashier's check? On this question counsel for both parties have cited numerous cases in their original and supplemental briefs in support of their respective contentions. It is apparent from an examination of these authorities that every case depends to a considerable extent upon its own circumstances. It was held in Union Central

Life Insurance Co. v. Erwin, 44 Okla. 768, 145 Pac. 1125, that where a mortgagee is threatening to foreclose its mortgage, and the mortgagor arranged to secure a new loan on the property mortgaged, had no other means of paying the mortgage except to secure a new loan, made arrangements for a new loan, offered the mortgagee all that could have been collected under foreclosure proceedings, and the mortgagee refused to execute a release of his mortgage in order that the new loan could be secured unless the mortgagor should pay a bonus for such release, and the mortgagor did pay said bonus under protest, such payment was made under compulsion and could be recovered back. To the same effect is the holding in the case of Kilpatrick v. Germania Life Insurance Co., 183 N. Y. 163, 75 N. E. 1124, 2 L. R. A. (N.S.) 574, and a number of other cases cited. On the other hand, in the case of Detroit Edison Co. v. Wyatt Coal Co., 293 Fed. 489, the facts were that plaintiff company contracted with defendant for a large quantity of coal at $2.50 per ton; that defendant shipped a large portion of the coal contracted, and charged $2.85 per ton, and that plaintiff was a public service corporation, supplying heat, electric lights and power in the city of Detroit, and because at the time it was engaged in furnishing its service to manufactories engaged in war work for the government, and it being imperative that the plaintiff should receive the coal, and for this reason paid the increased price. The court there held that plaintiff was not entitled to recover back the amount paid in excess of the contract price for the reason that the payment was not made under compulsion and duress.

In Chesebrough v. U. S., 192 U. S. 253, plaintiff entered into an agreement with a third party to convey certain real estate and to deliver his deed therefor. Because of an act of Congress which purported to require the payment of a stamp tax on such instruments, the purchaser of the real estate refused to pay for same unless the taxes were paid on the deed. For this reason plaintiff paid the collector of internal revenue $600 for the revenue stamps, and brought this action to recover it back. It was held that though the revenue stamps were not required to be affixed to the deed, plaintiff was not entitled to recover the amount paid for the reason that he had not paid under compulsion, but voluntarily.

The rule as applied to the payment of money involuntarily or under duress, so as to entitle the party paying to recover it back, has been announced in numerous cases and with very little variance. It was said in Adams v. Schiffer, 11 Colo. 15, 17 Pac. 21, that transactions had under stress of pecuniary need do not amount to compulsion. Compulsion or coercion must furnish the motive for the payment sought to be recovered before one can maintain an action to recover money paid with a knowledge of all the facts under which it was demanded. In order to recover back on the ground of involuntary payment or duress, compliance with the illegal demands must be the more effective and practical remedy of the party.

What motive prompted Cottingham or his agent, McCracken, to pay the bank the amount of the cashier's check? McCracken testified in response to very leading questions by the court that he paid the bank in order to keep it from charging the cashier's check against Cottingham's account. However, there is no testimony that any officer or agent of the bank had told McCracken that the cashier's check would be charged to Cottingham's account. The only testimony as to what was said by the bank's officers or agents on this subject was that of Bentley, who handled the transaction for the bank.

"A. When the cashier's check was actually returned, I called Mr. McCracken and told him the item was back protested, asked him if it should be charged to Mr. Cottingham's account, or if he would bring a check and take it up. He replied, 'Just hold it a few days and I will let you know.' "

That statement of itself does not constitute any degree of coercion or duress. It would hardly be expected of a loyal employee of the bank to say less under the circumstances. Several days later Bentley again called McCracken, and told him he was still holding the cashier's check as a cash item and that it should be taken up at once, and McCracken replied that he would see to it right away. With reference to the time that plaintiff, Hadley, gave McCracken his check to pay for the protested cashier's check Hadley testified as follows:

"A. I think I can answer the question. I think I understand what you mean. I asked Mr. McCracken at the time if Mr. Cottingham was not liable for the check. Q. What did he state in answer to your question as to who was liable? A. At the time he said, if I remember right, he said that he was, if my memory serves me right—I am not sure about it—he said he would take it up with Mr. Cottingham."

Again, on cross-examination, Hadley gave the following testimony:

"Q. Did I understand you to say, Mr. Had-

ley, at the time you talked to Mr. McCracken he stated to you that he was under the impression that Mr. Cottingham was liable for the amount of the check that is the reason? A. There was some conversation of that kind —Yes, sir."

The foregoing statement of the witness Hadley indicated that the motive that prompted the payment to the bank was the belief that Cottingham was legally liable for the amount, and not the position the bank occupied with reference to Cottingham, or any statement made by the employees of the bank. It may be true that the bank was in a position to seize the funds of Cottingham and apply them upon the indebtedness by charging the protested check to his account, but the mere fact the bank occupied this position would not alone justify a presumption that it was going to do so, or that Cottingham would object to or protest such action.

Attention is called to the rule laid down in Cyc., vol. 30, at page 1308, which reads as follows:

"Where a person unlawfully demanding a payment is in a position to seize or detain the goods or other personal property of a person against whom the claim is made, without a resort to judicial proceedings in which the parties may contest the validity of the claim, payment under protest to recover or retain the property will be considered as made under compulsion, and the money can be recovered back, at least where a failure to get or retain immediate possession and control of the property would be attended with serious loss or great inconvenience."

One of the requirements to come within this rule is payment under protest, or at least something to show that payment was prompted by compulsion or coercion, and not voluntarily. Another requirement, which the text indicates is not universal, is where a failure to get or retain immediate possession and control of the property would be attended with serious loss or great inconvenience. Most of the cases in which relief was granted the person making payment disclose that such person would have suffered serious loss, or great inconvenience, had they not paid the illegal demand. Cottingham's loss would have been no greater if the bank had charged the check to his account, and there is nothing in the evidence to indicate that he would have suffered any great inconvenience.

There appears to have been no protest by either Hadley or Cottingham or his agent to the bank's request for payment, nor any question raised with the bank of the bank's legal right to collect. Neither does it appear that Cottingham or Hadley were particularly disturbed or influenced by the request of Bentley, as several days elapsed between the time Bentley first called the matter to McCracken's attention and the time payment was made. In view of all the facts and circumstances, we are of the opinion that Cottingham acted voluntarily and not under compulsion or coercion in taking up the protested cashier's check. Detroit Edison Co. v. Wyatt Coal Co., 293 Fed. 489; Little v. Bowers, 134 U. S. 547; Chesebrough v. U. S., 192 U. S. 253, 48 L. Ed. 432; Railway Co. v. Dodge County, 98 U. S. 543, 25 L. Ed. 196; Vincennes Bridge Co. v. Board of County Commissioners, 248 Fed. 93, 21. R. C. L. 145.

Cottingham having paid the bank's claim voluntarily, with full knowledge of all the facts, is he or his assignee, Hadley, entitled to recover it back? We think not.

"* * * Money voluntarily paid under a claim of right to payment, with full knowledge of all the facts which would entitle the payor to relief against the payment of the claim cannot be recovered on the ground that the claim was illegal. * * *" American Surety Co. v. Steen, 86 Okla. 252, 208 Pac. 212; Elston v. City of Chicago (Ill.) 89 Am. Dec. 361; Brumagin v. Tillinghast (Cal.) 79 Am. Dec. 176; Clark v. Dutcher, 9 Cow. (N. Y.) 674; Kenneth & Gibson v. South Carolina Railroad Co. (S. C.) 98 Am. Dec. 382; Lester v. Mayor of Baltimore (Md.) 96 Am. Dec. 542; Commissioners. etc., v. Walker. 8 Kan. 431; Murphy v. Creighton, 45 Iowa, 179; Jefferson Co. v. Hawkins (Fla.) 2 South. 362; Hunt County v. Greer (Tex. Civ. App.) 214 S. W. 605.

It is urged that this case comes within the following exception to the above rule:

"Money paid under a mistake of law or fact may be recovered if the money was not due and payable and in conscience ought to be returned."

Several cases are cited in support of this contention, some of which we here call attention to.

The case of Green v. E. H. Taylor, Jr., & Sons (Ky.) 212 S. W. 925, deals with a statute which requires the repayment of money collected by a public official as in this case. Neither does the opinion appear to support the exception urged. At page 928 of the opinion it is said:

"However, as regards the payment of taxes, and although it was held by this court in Bruner v. Town of Stanton, 102 Ky. 459, * * * and probably in other cases, that license and other taxes paid to a municipality without compulsion, but under a

mistaken belief that the ones paying were liable for the taxes, could and should be recovered, the general doctrine, which now prevails, is that taxes, paid to counties, cities, towns, and county officers collecting the state revenues and other collecting officers, if the taxes are voluntarily paid, cannot be recovered, although not due, and paid under a mistake of law. * * *"

The case of Gilpatric v. Hartford (Conn.) 120 Atl. 317, also deals with a special statute requiring repayment of funds illegally collected, and is not applicable to the case at bar. Several other cases are cited, some of which are earlier Kentucky decisions, and in view of the fact that the foregoing rule seems to be well established in this jurisdiction, as well as many others, we think it unnecessary to examine these authorities further. American Surety Co. v. Steen, 86 Okla. 252, 208 Pac. 212; Detroit Edison Co. v. Wyatt Coal Co., 293 Fed. 489; Railway Co. v. Dodge County, 98 U. S. 543, 25 L. Ed. 196; Little v. Bowers, 134 U. S. 547, 33 L. Ed. 1016; Chesebrough v. United States, 192 U. S. 253, 48 L. Ed. 432; Vincennes Bridge Co. v. Board of Co. Com'rs, 248 Fed. 93; Bradley Lumber Co. v. Bradley County Bank, 206 Fed. 41, 124 C. C. A. 175.

There is no contention in the case at bar that the Farmers National Bank concealed any fact from Hadley or Cottingham or that the bank was guilty of fraud in any particular. It is contended that the bank was negligent in the handling of the collection. This constitutes an issue of fact. The general finding of the trial court was in favor of defendant on such questions. There was at least some evidence to the effect that the bank followed the instructions of McCracken, and under the established rule of this court, that finding will not be disturbed on appeal. Gaines Brothers & Co. v. Citizens Bank of Henryetta et al., 84 Okla. 265, 204 Pac. 112.

The judgment of the trial court is therefore affirmed.

HERR, HALL, LEACH, and DIFFENDAFFER, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) 30 Cyc. p. 1298; 21 R. C. L. p. 143; 6 R. C. L Supp. p. 1254. (2) 30 Cyc. pp. 1298, 1315; 21 R. C. L. p 141; 6 R. C. L. Supp. p. 1254.