AETNA LIFE INS. CO. v. EAKINS et al.

No. 18230. Opinion Filed July 2, 1929.

Rehearing Denied April 29, 1930.

Wilson & Wilson and Albert K. Little, for plaintiff in error.

Boynton & Reilly, for defendant in error C. R. Klingman.

FOSTER, C. This action is to foreclose a real estate mortgage given to the Aetna Insurance Company, hereinafter referred to as plaintiff, and executed by David F. Eakins and wife, the land being later sold subject to the mortgage to Calvin R. Klingman, the defendant. The mortgage became due October 1, 1922. Sometime prior to the maturity, Gum Brothers, of Oklahoma City, who are admitted to have had authority to collect interest coupons on this mortgage, notified Klingman of the due date of the principal and inquired whether or not he desired to negotiate a new loan, renew the old one, or pay the same in full.

Pursuant to this notice, Klingman secured a cashier's check from the First State Bank of Cashion, payable to Gum Brothers, for the full amount of the mortgage, and sent the same to Gum Brothers with a letter stating that it was to cover the mortgage. Gum Brothers deposited the check to their credit in the Liberty National Bank of Oklahoma City for collection. The Liberty National Bank indorsed the same to the Oklahoma branch of the Federal Reserve Bank of Kansas City, which last bank sent it to the First State Bank of Cashion, and the Cashion bank marked it paid and issued its draft payable to the Federal Reserve Bank of Kansas City, drawn on the Commerce Trust Company of that city.

Before the draft on the Commerce Trust Company was paid, the First State Bank of Cashion failed, and the draft was accordingly protested, the same being charged back to the Federal Reserve Bank and by them to the Liberty National Bank, and by the Liberty National Bank to the account of Gum Brothers.

Upon the deposit of the check by Gum Brothers in the Liberty National Bank, they sent their individual check to the plaintiff at Hartford, Conn., and thereupon the plaintiff issued a release of the mortgage, which, together with the notes and original mortgage, were sent to Gum Brothers for delivery to the defendant.

After the draft on the Commerce Trust Company was protested, the plaintiff repaid Gum Brothers and Gum Brothers returned the release, notes, and mortgage to the plaintiff. Gum Brothers also notified the defendant and he came to the office of Gum Brothers and after some conversation paid them $220. The defendant thereafter refused to pay the mortgage, and this suit was instituted.

At a trial in the district court the defendant's motion for a directed verdict was sustained, and the motion of the plaintiff for a like verdict was overruled, and judgment granted in favor of the defendant canceling the notes and mortgage. After an unsuc-

cessful motion for a new trial the cause is brought here for review.

The several assignments of error on behalf of plaintiff are presented under the following propositions:

First. A check of a person himself, of a third person, or a cashier's check, bank draft, or certificate of deposit, is not ordinarily payment of an antecedent debt unless the parties specifically so agree.

Second. Limitation on agent's authority to bind principal in accepting payment in anything other than money.

Third. Estoppel of the defendant in error by his own acts after the discovery of the loss.

For a proper determination of this cause, the first question that should be answered is whether or not Gum Brothers were the agents of the plaintiff for the purpose of collecting the principal of this mortgage. It is admitted that Gum Brothers had authority to collect the interest, and pursuant thereto the interest coupons were sent to Gum Brothers before maturity, to be delivered to the borrower when paid. The notes and mortgage were held by the plaintiff until money in payment thereof was received. However, all communications concerning this loan, as well as other loans in Oklahoma, were written by Gum Brothers. They notified the defendant of the maturity of the interest as well as of the maturity of the principal; they advertised themselves by a sign in their office as the official representatives of the plaintiff in Oklahoma. Plaintiff accepted in this case the personal check of Gum Brothers in payment of the principal, Gum Brothers offered to extend the loan, and this general course of conduct and manner of transacting business had extended over a period of 15 or 20 years between Gum Brothers and the plaintiff. We think, under these circumstances, that there was at least an implied agency between plaintiff and Gum Brothers which authorized Gum Brothers to collect the principal in this case.

The authority of an agent to receive payment for the owner of a negotiable note need not be shown by direct testimony, but may be established by circumstances and a course of dealing between the parties. Walker v. Beveridge, 107 Okla. 147, 231 Pac. 217; International Life Ins. Co. v. Bradley, 114 Okla. 231, 246 Pac. 222; Dandois v. Raines, 215 Okla. 83, 241 Pac. 1099.

A principal is bound by the apparent, as well as the actual or express, authority given its general agents, where third persons have in good faith relied thereon. National Surety Co. v. Miozrany, 53 Okla. 322, 156 Pac. 651.

Plaintiff further contends that it is almost a universally followed rule that, in the absence of a special agreement, the acceptance of a check does not operate as payment of a debt unless the check is paid; but this rule has no application to the particular facts in the case at bar. Here the cashier's check was paid by the drawee bank by issuing its draft, which draft was dishonored.

According to the great weight of authority, when a collecting bank takes a draft in payment of a check drawn on the drawee bank, it does so at its own risk and peril, and, if the draft is afterwards dishonored, the bank accepting the same is liable. This is based upon the theory that a check calls for cash and anything but cash is received at the acceptor's risk. This was the holding in the case of Federal Reserve Bank of Richmond v. Maloy, 264 U. S. 160.

Plaintiff contends that, as the result of the Richmond Case, regulations were adopted by the Federal Reserve Bank in which a collecting bank was authorized to accept drafts in payment of checks, and were not liable to the sending bank until the drafts were paid, and that these regulations were later recognized and approved by the case of City of Douglas v. Federal Reserve Bank of Dallas, 271 U. S. 489, 70 L. Ed. 1051, and that by reason of these regulations the defendant here knew that a draft could be, and perhaps would be, issued in payment of the cashier's check.

It appears that Gum Brothers deposited this check in the way that the large majority of checks are deposited for collection, and that pursuant to custom, and the rules of the federal reserve system, and according to Gum Brothers' agreement with the Liberty National Bank, as appears upon the deposit slip, Gum Brothers accepted the regulations above referred to, that the check would perhaps be paid by draft issued by the drawee bank.

But the defendant, Klingman, did not deposit the check in the Liberty National Bank, and did not agree to be bound by the rules of the federal reserve banking system. And as Gum Brothers were acting for the plaintiff, we believe that this amounted to a payment. It plainly shows that at Gum Brothers request the check would have been sent direct for collection, or that it would have been sent to the other bank at Cashion to be presented to the First State Bank. In either case, in all probability,

the money would have been received upon the check before the failure of the bank.

Plaintiff next contends that Klingman was instructed not to send a cashier's check or a personal check, and, having violated the instructions of Gum Brothers, he could not now contend that this was payment.

It appears that Gum Brothers sent out cards notifying the defendant of interest payment due, on which was printed the following: "Do not send local bank cashier's check or local personal check," and requested that bank drafts, postoffice money orders, etc., be sent and that the same be made payable to Gum Brothers. These cards, however, were not used in notifying Klingman of the due date of the principal, but a special letter was sent in which no mention was made as to the kind of remittance desired.

Regardless, however, of whether or not instructions were given Klingman not to send a cashier's check, we believe that, as Gum Brothers were acting as agents for the plaintiff and accepted the cashier's check without protest, this amounted to a waiver of the previous demand made. Bank drafts were requested. Cashier's checks, as well as bank drafts, are based upon the responsibility of the bank which issues the same, and under these circumstances we believe that the acceptance of the cashier's check would be a waiver of the previous request for draft.

The plaintiff further contends that it accepted this cashier's check subject to the final payment, and so notified the defendant. But in its letter of acknowledgment to Klingman, wherein it acknowledged receipt of the cashier's check, we find the following: "Subject to the final acceptance by the investor." We do not believe this can be interpreted to mean that it was subject to the final payment of the draft.

The plaintiff relies upon the case of Thomas v. Westchester (N. Y.) 21 N. E. 674, in which the facts are somewhat similar to the case at bar, which case held under similar conditions that the debt was not paid. However, in that case an element of fraud entered into the transaction not present in the instant case.

Plaintiff cites numerous cases from Oklahoma, but after a diligent study of each of them we do not believe they are controlling in the case at bar. The facts in each case are entirely different. We will refer to a few of the cases relied upon.

The case of Shapleigh Hdwe. Co. v. Crews, 124 Okla. 247, 255 Pac. 696, is cited by plaintiff as authority, but in that case the check which was given in payment of the debt was never charged to the defendant's account, but was hung on a hook in the bank and remained there until the bank closed.

The case of Bennett v. American Nat. Bank of Enid, 130 Okla. 23, 264 Pac. 912, is relied upon by plaintiff, but in that case there was an agreement as to the acceptance of the draft; also, that the plaintiff bank had information as to the solvency of the drawee bank.

The case of Hadley v. Farmers Nat. Bank, 125 Okla. 250, 257 Pac. 1101, does not decide the point here involved, but intimated that if the conditions were the same as in the case at bar there would be no doubt as to the cancellation of the debt.

From an examination of the many cases presented, we believe the case of First Nat. Bank of Stratford v. Stockton, 117 Okla. 120, 245 Pac. 638, while not directly in point with the case at bar, is more nearly controlling than any of the cases cited. In that case a creditor sent a bill of lading with draft attached upon a debtor to the First National Bank of Stratford. The debtor, Stockton, paid the draft by a check upon the First State Bank of that city. The check was presented and the First National Bank accepted in payment a draft drawn by the First State Bank upon its correspondent bank in another city. Before the payment of the draft, the First State Bank closed its doors. The check was charged back to the account of Stockton in the First National Bank, he having an account in that bank also. Stockton brought suit to recover the same, and the court held that he was entitled to recover and that the debt had been paid. Under the facts in that case the bank became the agent of the creditor and accepted the draft in payment of the check and his principal was bound thereby and the debt paid.

Under the second proposition, the plaintiff contends that, even admitting the agency of Gum Brothers, they could not bind their principal, the plaintiff here, by an agreement short of the receipt of the actual money. In support of this proposition, the plaintiff relies principally upon the case of State Bank of Midland v. Byrne (Mich.) 56 N. W. 355, in which it is held, in substance, that an agent authorized merely to collect the demand or to receive payment of a debt cannot bind his principal by an arrangement short of the actual collection or receipt of the money, and held under circumstances somewhat similar to the case at bar that the principal was not bound where the agent

accepted something else other than actual cash.

While the facts in the Michigan case are not the same as in the case at bar, nevertheless, we think our court has passed upon this proposition in the case of First Nat. Bank of Stratford v. Stockton, supra, where the agent accepted, in lieu of cash in payment of a check, a draft, and this was held to be a payment of the check and a cancellation of the debt.

The question as to whether an agent has authority to do a particular act is a question of fact to be determined from the evidence, including the circumstances and the course of dealing between the parties. Walker v. Beveridge, supra.

From the circumstances above enumerated, we believe. that, under the facts in this case, in the course of dealing between the. parties, the agent, Gum Brothers Company, had authority to accept the check in payment, and the principal, plaintiff herein, would therefore be bound thereby.

Under the third proposition it is the contention of the plaintiff that the defendant is estopped by his payment of the sum of $220. Plaintiff cites no authorities to support this contention in its original brief, but in its supplemental brief relies upon the case of Hadley v. Farmers Nat. Bank, 125 Okla. 250, 257 Pac. 1101, in which case it was held that the voluntary payment of a return cashier's check on account of the failure of the bank issuing said check estopped the debtor from denying liability of the debt by reason of the cashier's check. The opinion points out, however, that at the time the debtor paid the check he was acquainted with all the facts and circumstances concerning the protested item, and, although the cashier's check had been paid by a draft issued under circumstances somewhat similar to the case at bar, the debtor knew of all these conditions at the time of the payment. Under the facts in the instant case, according to the testimony of the defendant, he was not acquainted with the facts at the time he paid the $220, but was under the impression that the cashier's check itself had been returned, and further testified that he paid the $220 only for the purpose of securing additional time within which to determine whether or not he was liable for the entire amount. In order to work an estoppel one must be aware of the facts which would affect his rights. He is not estopped when ignorant of the fact upon which his legal rights might depend. Smith v. Minneapolis Threshing Mch. Co., 89 Okla. 156, 214 Pac. 178; Citizens Bank of Mil-

lerton v. Beeson, 104 Okla. 293, 231 Pac. 844; St. L. & S. F. Ry. Co. v. Mann, 79 Okla. 160, 192 Pac. 231. We therefore believe that the defendant was not estopped.

In the oral argument in this case there was some contention that the court erred in submitting certain questions to the jury. No serious contentions are made, and the particular' reasons were not given. From an examination of the briefs in this case we do not believe that this particular question was presented. It is not mentioned in the three propositions above referred to on which plaintiff bases its case. No authorities or argument of any kind is found anywhere in the brief, except the following statement in the supplemental brief of plaintiff:

"The court in the instant case took the case from the jury and directed a verdict for the defendant. This is plainly error. (J. S. Martin Lbr. Co. v. Rice, 136 Okla. 172, 276 Pac. 733). On the contrary, the court should have directed a verdict for the plaintiff in the case."

We have examined the case of the Martin Lbr. Co. v. Rice, supra, and find that the holding in that case was to the effect that under the circumstances the evidence was sufficient to go to the jury on the question of due diligence in the presentation of a check for payment. This is not in point with the case at bar. On the proposition decided in the Martin Lbr. Co. Case, there is no dispute in the evidence. In the instant case, as we view it, the only doubtful question that might have been properly presented to a jury was the question of the agency of Gum Brothers. But on this proposition, the plaintiff presents no authorities nor makes any contention. And while plaintiff may have preserved the question in its petition in error and motion for a new trial, it was not specifically alleged as error, and not having argued the same in its brief, we think the matter has been waived. However, from an examination of the evidence, we believe that no conclusion as to agency could be reached other than that as arrived at herein.

Finding no reversible error in the record, we hold that the case should be, and is hereby, affirmed.

BENNETT, TEEHEE, LEACH, and REED, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) 21 R. C. L. p. 858; 3 R. C. L. Supp. p. 1197; 7 R. C. L. Supp. p. 723. (2) anno. 35 L. R. A. (N. S.) 26; 21 R. C. L. p. 60; 3 R. C. L. Supp. p. 1133; 5 R. C. L. Supp. p. 1142; 6 R. C. L. Supp.

p. 1252; 7 R. C. L. Supp. p. 703. (4) 21 R. C. L. p. 61; 4 R. C. L. Supp. p. 1402; 7 R. C. L. Supp. p. 703. See "Agency," 2 C. J. §708, p. 944, n. 96; §713, p. 947, n. 11; §727, p. 956, n. 86. "Payment," 48 C. J. §50, p. 617, n. 21; §58, p. 623, n. 80, 85.