### DETROIT GRAPHITE CO. v. CARNEY et al.

No. 24004.    Nov. 26, 1935.

Rehearing Denied Jan. 7, 1936.

Application for Leave to File Second Petition for Rehearing Denied Jan. 28, 1936.

Charles L. Yancey, G. C. Spillers, Donald L. Brown, and E. M. Calkin, for plaintiff in error.

Hulette F. Aby, William F. Tucker, Frank Settle, and William H. Martin, for defendants in error Waite Phillips and Chas. M. Dunning Construction Company.

A. C. Saunders, for Employers' Liability Assurance Corporation.

BUSBY, J. This is an action by the Detroit Graphite Company, a corporation, against J. R. Carney, an individual doing business as the J. R. Carney Company, Charles M. Dunning Construction Company, a corporation, Waite Phillips, and the Employers' Liability Assurance Corporation, Ltd., of London. The questions involved arise under the materialman's lien law of the state.

The trial resulted in a money judgment in favor of the plaintiff and against the defendant J. R. Carney, and in a judgment denying recovery in favor of plaintiff against any of the other defendants. The defendants, other than J. R. Carney, have presented a cross-appeal in which they urge that the trial court erroneously failed to allow them any attorney's fee.

The facts material to a determination of the issues in this case are as follows:

The defendant Waite Phillips, as the owner of real estate situated in the city of Tulsa, made a contract with the defendant Charles M. Dunning Construction Company, as general contractor, for the construction and painting of a building on said property, the building to be known as the Philcade Building. The general contractor then made a subcontract with the defendant J. R. Carney to do the painting on the building. The defendant Carney then ordered from the plaintiff, Detroit Graphite Company, certain materials and paints of the aggregate value of $4,166.39 to be used by Carney in carrying out his subcontract. This order was placed in July, 1929. The materials were delivered from time to time by the plaintiff, the last of the deliveries being in the early part of the year 1930. However, long before the delivery had been completed, the defendant Carney became anxious to collect a part of the contract price provided by his subcontract, and in order to do so, he went to the Detroit Graphite Company and advised them that for the purpose of making collections it would be necessary for him to present to the principal contractor some evidence that the material bill had been paid. In order to assist Carney in making his collection the Detroit Graphite Company accepted from him a check with a secret agreement that the same would not be immediately cashed and delivered to Carney a receipted bill for the entire amount of materials ordered. The bill consisted of an itemized statement of the account showing the amount thereof to be $4,166.39 with a notation indorsed thereon in the following language: "9-1-29 Paid by check No. 343, Detroit Graphite Company, Ralph Bynum." Carney then presented the receipted bill to the Charles M. Dunning Construction Company for the purpose of obtaining the payment of a part of the amount payable under his subcontract. However, before the construction company would make any payment on the bill, it called the plaintiff by telephone for confirmation and was advised that the bill had been paid. In connection with this telephone conversation the testimony of the agent of the Detroit Graphite Company is to the effect that he said, in substance, "Yes, the bill has been paid; I now have the check before me." In reliance upon the apparent fact that the bill had been paid, the principal contractor then made to Mr. Carney a substantial payment on the subcontract price, and subsequently, from time to time, made additional payments until Carney had been paid more than the amount of plaintiff's account. These payments were all made during the time when the construction company believed that the plaintiff's account had been paid in full.

On February 19, 1930, which was more than five months after the check had been delivered by Carney to the plaintiff, the plaintiff wrote to the defendant construction company advising it that the check had not in fact been paid. Thereafter the construction company made no further payments to the defendant Carney, but the remainder of the amount of the subcontract price was paid to laborers and materialmen who worked under the subcontractor and who would have had liens had they not been paid. It is important to notice in connection with the check that, although a secret

understanding existed between the plaintiff and Carney that the check would not be immediately presented for payment, the construction company was never advised of this secret understanding until February of 1930, and until that time had no notice or knowledge that the check had not in fact been paid. Neither was the construction company ever advised that the plaintiff did not expect to present the check for payment in the regular course of business, or that the check had not in fact been presented for payment. The evidence discloses that at the time the plaintiff received the check from Carney, it was expected that Carney would thereby be able to make collections from the principal contractor, and would use such collections for the purpose of meeting the check. He did not do so. Plaintiff then brought this action for the purpose of recovering from the principal contractor and owner under the provisions of the materialman's lien law of the state.

The trial court properly held that the plaintiff was by reason of its conduct estopped from recovering from either the contractor or the owner of the building. All of the elements of equitable estoppel are present in this case. The plaintiff concealed from the defendant construction company the fact that there existed between itself and Carney a secret understanding that the check would not be immediately presented for payment; by its conduct it led the plaintiff to believe that the bill had in fact been paid. This for the purpose of assisting the defendant Carney in making collections on the subcontract price from the principal contractor. The principal contractor made such payments, thereby altering its position to its detriment. The plaintiff cannot now assume a different position for the purpose of collecting its account.

Appellants urge that the delivery of a check does not, as a matter of law, constitute payment, but is only conditional, and, unless the check is paid when presented, there is, in fact, no payment. See Aetna Life Ins. Co. v. Eakins et al., 143 Okla. 52, 287 P. 402. It is true that as between the parties the acceptance of Carney's check by the plaintiff did not in fact pay the bill. While a check is only conditional payment as between the parties, it is to be expected that such an instrument will be presented for payment promptly in the regular course of business. If such an instrument is not honored upon presentment, the fact that an account has not in truth been paid will be soon ascertained. Checks are customarily and commercially used for the liquidation of current accounts. The defendant construction company cannot in this case be assumed to have known that the check of Carney was being used as a substitute for a promissory note.

Although the principal contractor in this case was aware of the fact that payment had been made by check, he had the right to presume that the check would be promptly presented for payment and that the plaintiff in this case, knowing the purpose for which the receipted bill was to be used, would promptly advise it, the principal contractor, if the check was not honored when presented. The plaintiff did not advise the principal contractor that the check had been presented and dishonored for the simple reason that this had not been done owing to the secret understanding between the plaintiff and the subcontractor Carney. We think the principal contractor rightly believed that which it was intended by both Carney and the plaintiff that it should believe, namely, that the material bill had been paid, and, having acted on this belief, it was rightfully protected in the trial court from a second and subsequent payment of the same bill to the materialman. Similar situations have been considered by the courts of last resort in Utah, Missouri, and Washington, and in each of those states recovery has been denied. See West v. Pinkston, 44 Utah, 123, 138 P. 1152; Julius Seidel Lumber Co. v. Weaver et al. (Mo. App.) 184 S. W. 484; Nelson and Castrup v. Culver, 94 Wash. 548, 162 P. 978. There is, of course, slight distinctions in the facts in each of those cases when compared with the case at bar, but the underlying principles therein recognized remain the same.

It is also urged by the plaintiff in this case that, since none of the representations were made to the owner, Waite Phillips, even though recovery should be denied against the principal contractor, to whom the representations were made, the plaintiff should be allowed to recover from the owner, it being asserted in this connection that, since no misrepresentation was made to the owner, he cannot claim the benefit of equitable estoppel. Obviously, there is no merit in this contention. If the owner were compelled to pay this bill, he could rightfully deduct the amount of his payment from the amount due the principal contractor, which, in effect, would make the principal contractor pay the bill twice. It is utterly impossible to pay any account twice unless somebody furnished the necessary additional money to do so. The judgment of the trial court denying recovery to

the plaintiff as against the principal contractor, Charles M. Dunning Construction Company, and the owner, Waite Phillips, is affirmed.

This brings us to a consideration of the cross-appeal of the defendants. The trial court found, as a matter of fact, that an attorney's fee of $500 would be a reasonable attorney's fee for the defendant's attorneys, if they were entitled to receive anything at all, but concluded, as a matter of law, that in this case the defendant's attorneys were not entitled to recover an attorney's fee.

In order to understand the ruling of the trial court, it is essential that we review certain additional facts not previously mentioned in this opinion. By the provisions of section 10980, O. S. 1931, the owner of property upon which a lien is claimed is authorized to discharge the lien upon the property by depositing with the court clerk a sum in cash sufficient to satisfy the amount of the lien claimed and executing and filing with such clerk a bond conditioned for the payment of reasonable attorney's fee, court costs, and interest. This same section of the statute also provides that in the event the lien claimant shall, in a suit brought for that purpose, recover the full amount of his lien claim, he shall be entitled to recover a reasonable attorney's fee. It is entirely silent on the question of whether the owner, or contractor, if he, or they, prevail in such action, shall also be entitled to an attorney's fee. In this case the owner, Waite Phillips, complied with the provision of the foregoing statute by making the necessary cash deposit and posting the necessary bond. The defendants urge that, notwithstanding the silence of this section, they are entitled to invoke the provisions of section 11021, O. S. 1931, which authorizes the recovery of an attorney's fee by the successful party in any action "brought to enforce any lien."

Defendants assert, in substance, that even though the lien upon the property is discharged by the depositing of the money and the posting of the bond previously mentioned, the money is substituted in lieu of the property and the claim of plaintiff constituted a lien against the fund on deposit, and that the action is still one to enforce a lien and thus falls squarely within the provisions of section 11021, supra. They urge that the two sections of the statute, above referred to, should be construed together and harmonized and that when so construed, the owner and contractor, when successful in defending against a lien claim, are entitled to an attorney's fee, even though section

10980, supra, is silent as to their right in that respect.

The plaintiff, on the other hand, urges that the provisions of section 10980 with reference to attorney's fee are exclusive and that the lien claimant only can recover attorney's fee in an action commenced after a lien on property has been discharged by a cash deposit and bond.

The purpose of section 10980 is apparent from an examination of its contents. It was intended thereby to provide a means and method whereby the owner of the premises upon which a lien is claimed could discharge his premises from the burdens of the lien claim pending a determination of the validity or amount thereof. The deposit and bond thereby required were intended to take the place of the property on which the lien previously existed, and, although the claim of the lien claimant ceases to be a lien against the property after the provisions of that section of the statute have been complied with, it thereafter becomes and continues to be a lien against the fund on deposit. Hafker et al. v. Henry et al., 39 N. Y. Supp. 134. The action to realize on such a lien claim is therefore an action to enforce a lien and comes within the terms used in section 11021, supra. In enacting section 10980 the Legislature evidently appreciated the fact that the amount of the items of cost and attorney's fee in connection with liens cannot be definitely determined in advance, and therefore made provision for the posting of a bond to secure the payment of those items in order to dispense with the necessity of determining in advance the amount of money that would be necessary to secure their payment. The provisions of the statute referring to attorney's fee, while they limit the recovery of such fee on the posted bond to cases in which the judgment recovered is for the entire amount of cash deposited, were incorporated in the statutes with the primary view of making some provision for the payment of an attorney's fee which was already allowable under the provisions of section 11021, supra. Since the lien claimant might acquire a lien against the building for an attorney's fee in the event of a successful action, it was deemed appropriate to incorporate such provision in the statute to secure the payment of such attorney's fee when the owner discharged the lien against the premises by making the deposit contemplated by the statute. The absence of any reference to the possibility of an attorney fee being allowed to the employer may be explained by the fact that the employer did not, while the lien was against

the premises, have any security for the payment of such attorney's fee in the event he should be successful in the litigation. It was therefore unnecessary for the Legislature to make any provision for substitute security. We conclude from a consideration of the two sections of the statute under discussion that they should be construed together, and that the provisions of section 10980 are supplementary to the provisions of section 11021. Under this construction, either of the parties to the litigation contemplated by section 10980, supra, may, if entirely successful, recover an attorney's fee. We are impelled to adopt this conclusion, not only by the language and terms of the statute and the purpose to be accomplished thereby, but also upon consideration of the possibility that the construction urged by the plaintiff and adopted by the trial court might render the provisions of section 10980 with reference to attorney's fee unconstitutional. At least, grave doubts would arise as to the constitutionality of the section under that suggested construction, as it would make it possible for one party, if successful, to recover an attorney's fee while denying the same relief to the other party in the event of his success. See Chicago, R. I. & P. Ry. Co. v. Mashore, 21 Okla. 275, 96 P. 630, 17 Ann. Cas. 277, and O'igschlager v. Stephenson, 24 Okla. 760, 104 P. 345. It is the duty of a court in construing a statute to adopt a construction which will avoid grave doubts or uncertainty as to its constitutionality, if such a construction is fairly possible. See Crowell v. Benson, 285 U. S. 22, 76 L. Ed. 598.

We therefore hold that in an action to enforce a lien upon money deposited by virtue of section 10980, O. S. 1931, either party may, if entirely successful, be allowed an attorney's fee. It follows that the trial court erred in denying this relief to the successful defendants in this case. The trial court, however, did find, as previously mentioned in this opinion, that $500 would be a reasonable attorney's fee. The judgment of the trial court will, therefore, be modified to allow the attorneys for defendants a reasonable attorney's fee in the sum of $500 to be taxed against the plaintiff in this action as a part of the costs, and, as so modified, the judgment of the trial court is affirmed.

McNEILL, C. J., and RILEY, PHELPS, and CORN, JJ., concur.