**ROBINSON v. EXCHANGE NAT. BANK
OF TULSA, OKL., et al.**

No. 1287.

District Court, N. D. Oklahoma.

June 30, 1939.

S. C. Edmister, John Ladner, and Carl H. Livingston, all of Tulsa, Okl., for plaintiff.

Joseph L. Hull and James E. Bush, both of Tulsa, Okl., for defendants National Bank of Tulsa and Exchange Nat. Bank of Tulsa.

Settle & Clammer, of Tulsa, Okl., for defendant R. M. Moody.

FRANKLIN E. KENNAMER, District Judge.

James B. Robinson was indebted to the National Bank of Tulsa in the sum of $1,820.44, and to the Exchange National Bank of Tulsa for $3,022.16, represented by notes dated October 23, 1935. He was also indebted to the defendant R. M. Moody in the sum of $1,000, evidenced by a note dated October 23, 1935, for money borrowed. The notes held by the banks were collateral form notes, providing in substance that certain assets were pledged to secure the payment of the note or any renewal or extension thereof, and of any and all other indebtedness to the bank. During the period from February 1, 1932, to April 24, 1933, Robinson became indebted to the Exchange National Bank of Tulsa for rent for office space in the sum of $1,332. On October 25, 1933, the Exchange National Bank of Tulsa ceased to do an active banking business and went into voluntary liquidation, and then transferred and pledged certain of its remaining assets to the National Bank of Tulsa to secure certain obligations given to said bank in consideration of the assumption by the National Bank of Tulsa of the deposit and certain other of its liabilities, and the assets so pledged included the then existing indebtedness of Robinson to the Exchange National Bank of Tulsa. The note given to the National Bank of Tulsa was due 90 days after date, and was secured by a pledge of two insurance policies, each in the sum of $5,000, and executed by Northwestern Mutual Insurance Company, 2½

246

shares of Wheatley Bros. stock, and 200 shares of Consolidated Oil Corporation stock owned by N. K. Moody, and by 20 shares of Standard Oil Company of Indiana, owned by Jane C. Moody, said parties having loaned the stock to Robinson to pledge as security upon the note. The note given to the Exchange National Bank of Tulsa was secured only by the life insurance policies and the 2½ shares of Wheatley Bros. stock, and subject to the pledge to the National Bank of Tulsa. This note was payable on demand, and its payment was guaranteed by R. M. Moody and W. Albert Cook. The note held by Moody was secured by a junior assignment of the life insurance policies above mentioned. The notes referred to herein held by the banks were renewals of earlier notes. Robinson executed and delivered separate assignments of each of the two life insurance policies as security for his indebtedness to the Exchange National Bank, said assignments having been dated January 26, 1931, and May 15, 1931.

On January 18, 1936, Robinson filed his voluntary petition in bankruptcy in this court, and on the same day was adjudged a bankrupt. He was granted a discharge on April 1, 1936. On February 20, 1936, the Exchange National Bank of Tulsa filed an unsecured claim against Robinson in the bankruptcy proceedings for the sum of $1,332 for office rent, which claim was allowed as an unsecured claim by the Bankruptcy Court. On May 15, 1936, the National Bank of Tulsa filed a claim against the bankrupt in the bankruptcy proceedings, on the note dated October 23, 1935, for $1,820.44, and alleged in the claim that the note was secured by 200 shares of common stock of Consolidated Oil Corporation, the property of Nelson K. Moody; 20 shares of stock of Standard Oil Company of Indiana, owned by Mrs. Jane C. Moody; 2½ shares of the capital stock of Wheatley Bros. and the two assignments of life insurance policies, and alleged that the Wheatley Bros. stock had a value of approximately $246.95, and that the policies of insurance, at that time, had a cash value of approximately $261. It asked that the court allow its claim as a secured claim to the extent of $507.95, and as an unsecured claim in the sum of $1,312.49, together with interest. The note referred to in this claim was renewed by a new note, dated July 21, 1936, after Robinson's discharge in bankruptcy, and the new note recited the same collateral as security.

On May 9, 1936, the Exchange National Bank of Tulsa filed an unsecured claim in the bankruptcy proceedings against Robinson on the promissory note, dated October 23, 1935, for $3,022.16, and stated in the claim that the only securities held were 2½ shares of the capital stock of Wheatley Bros., having a value of approximately $246.95, and the assignment of the two life insurance policies with a value of approximately $261, and that both of said securities were pledged to claimant subject to a prior pledge to the National Bank of Tulsa. It sought to have the claim allowed as unsecured, and it was so allowed by the Bankruptcy Court.

Moody did not file any claim in bankruptcy, but the indebtedness to him was duly scheduled in the bankruptcy proceedings by Robinson upon his schedule of creditors, as a claim secured by the assignment of the life insurance policies.

No dividends were declared paid to any of the un-secured creditors of Robinson in the bankruptcy proceedings, and none of the defendants received any dividends upon any of their claims. No order was made by the Bankruptcy Court with respect to the life insurance policies, the assignments thereof, or the cash surrender value, and no action was taken by the trustee in bankruptcy with respect to the collateral. The assignments of the life insurance policies were filed with the Northwestern Mutual Life Insurance Company shortly after their respective dates, but the assignments were not endorsed upon the policies, said policies being in possession of the company which issued them, to secure an indebtedness of the bankrupt to the company.

Robinson died on February 22, 1937, leaving a will which was duly admitted to probate on March 15, 1937, in the County Court of Tulsa County, Oklahoma. The plaintiff, widow of Robinson, was appointed administratrix with will annexed, and was residuary legatee. On March 29, 1937, plaintiff, as administratrix of her deceased husband's estate, signed a letter directing the payment out of the proceeds of a check for $6,371.31, issued by Northwestern Mutual Life Insurance Company, in payment of the sums due under the two policies of life insurance, as follows: Note to National Bank of Tulsa for $1,820.44; note to the Exchange National Bank of Tulsa for $3,022.16, with interest in the amount of $153.99; to the Exchange National Bank for

rent, $1,332, and the balance of $42.72 to be paid over to plaintiff as administratrix, and that upon the payment of the notes, the stock of Jane C. Moody and N. K. Moody were to be returned to them. The check of the Northwestern Mutual Life Insurance Company was payable jointly to the banks and to the administratrix, and was endorsed by the plaintiff before she delivered the letter directing the disbursement of the funds. However, upon her endorsing the check she was assured by the bank that the same would not be cashed until such time as she had been afforded an opportunity to discuss the entire matter with her attorney. She was present with her attorney when the letter directing payment of the proceeds of the check was signed by her. Premiums upon the life insurance policies were paid by Robinson after his discharge in bankruptcy. The evidence discloses that a representative of the bank had a conversation with the plaintiff relative to the insurance, and expressed the thought to her that there would be some salvage for her after payment of the indebtedness, but she testified that she was informed that approximately $4,000 would be payable to her from such policies. The evidence also shows that the matter of payment of the indebtedness was considered by plaintiff's then attorney, and that he made some investigation of the right of the bank to retain the proceeds of the check in payment of the notes and the rent account. The claim for rent was more than 3 years old at the time the bank obtained payment of it, which is in excess of the limitation period upon such accounts in Oklahoma. No claims were filed in the probate proceedings by the banks or Moody, and this suit was not filed until after the probate proceedings were concluded.

Plaintiff contends that the filing of claims with the Referee in Bankruptcy as unsecured, constituted a waiver of their liens, an election of remedies, judicial estoppel and res adjudicata; that the assignments of the insurance policies were to secure an indebtedness owing to the banks which existed at the time of the settlement of the policies, and that it should not include indebtedness which had been discharged in bankruptcy prior to the time of the settlement of the policies; that the defendants are estopped to assert any right to any sum in excess of $1,820.44, because they permitted and induced Robinson to pay premiums on life insurance policies after his discharge in bankruptcy and

prior to his death, upon representation that Robinson's estate would benefit thereby to the extent of about $4,000; that the rent account of $1,332 was barred by the Oklahama Statute of Limitations, and the rent claimed thereon was extinguished before Robinson's death, and finally that equity will aid plaintiff in recovering the sums so retained by the banks, because the same was paid or retained by mutual mistake of law and facts and under circumstances amounting to equitable fraud and undue influence, and constitutes an unjust enrichment of the defendants.

█ The general rule announced by numerous cases is that a creditor, by proving a general claim in bankruptcy proceedings, waives any security he may have, and having made an election of remedies, may not recover specific property in subsequent proceedings. See Gerber & Co. Inc. v. Wilson, 114 Conn. 378, 158 A. 803; Martin Music Co. v. Robb, 115 Cal.App. 414, 1 P. 2d 1000; First National Bank of Waterloo v. Exchange National Bank, 179 App.Div. 22, 153 N.Y.S. 818, 164 N.Y.S. 1092; In re Burr Mfg. & Supply Co., 2 Cir., 217 F. 16; In re Luber, D.C., 261 F. 221; In re O'Gara Coal Co., 7 Cir., 12 F.2d 426, 46 A.L.R. 916; Lewith v. Irving Trust Co., 2 Cir., 67 F.2d 855; Standard Varnish Works v. Haydock, 6 Cir., 143 F. 318; Hargadine-McKittrick Dry Goods Co. v. Hudson, 8 Cir., 122 F. 232.

█ The above rule is subject to an exception that it is inapplicable where the security held by the creditor is upon property not constituting assets in bankruptcy. In such cases, the creditor is to file his claim as an unsecured claim and the filing of it as such does not waive his security. A full disclosure was made in the instant case by the defendants in presenting their claims in the bankruptcy proceedings. See In re Anderson, D.C., 11 F.2d 380; Schloss v. Unsell, 114 Kan. 69, 216 P. 1091; Ivanhoe Building & Loan Association v. Orr, 295 U.S. 243, 55 S.Ct. 685, 79 L.Ed. 1419, and Note in 46 A.L.R. 922.

█ Proceeds of life insurance policies upon the life of a bankrupt, payable upon his death, are exempt and do not pass to the trustee in bankruptcy for the benefit of general creditors; all that passes to the trustee is the cash surrender value of said insurance when that is available to the bankrupt. See Burlingham v. Crouse, 228 U.S. 459, 33 S.Ct. 564, 57 L.Ed. 920, 46 L.R.A.,N.S., 148; Andrews v. Partridge,

248

228 U.S. 479, 33 S.Ct. 570, 57 L.Ed. 929; Everett v. Judson, 228 U.S. 474, 33 S.Ct. 568, 57 L.Ed. 927, 46 L.R.A.,N.S., 154; Frederick v. Fidelity Mutual Life Ins. Co., 256 U.S. 395, 41 S.Ct. 503, 65 L.Ed. 1009; Mercer National Bank v. White's Executor et al., 236 Ky. 128, 32 S.W.2d 734; also see Notes, 68 A.L.R. 1215; 103 A.L.R. 239, 249.

▬ The cash surrender value of the life insurance policies involved in this suit were not available to the bankrupt at the time of bankruptcy, by reason of the policies having been previously assigned and pledged for an indebtedness in excess of the cash surrender value. The banks properly proved their claims as unsecured and did not lose their liens upon the property which did not pass to the trustee in bankruptcy. The claims presented clearly showed the retention of their liens, and nothing contained therein evidenced a waiver of the security. General creditors were not injured because no property subject to the pledge was available for distribution to general creditors.

▬ The contention that the filing of unsecured claims constituted an election of remedies, judicial estoppel and res adjudicata, is without merit, as the banks were entitled to retain the lien upon the insurance policies so assigned to them and to present a claim as an unsecured creditor. They were entitled to both remedies. Neither is there an estoppel nor an adjudication that their claims were unsecured, by the filing of such claims, as the security retained by them was upon property exempt to the bankrupt and which would not have passed to the trustee.

▬ The second contention that the death benefits accruing and payable under the life insurance policies after filing the petition and adjudication in bankruptcy constituted after-acquired property, and that assignments thereof as security did not create a present lien on such future benefits, is unsound. Plaintiff contends that the assignment did not create a present lien, but was merely a contract for a future lien upon after-acquired property. It is urged that assignments of wages to be earned in the future are similar to assignments of insurance policies. Certainly, there can be no lien upon something that does not exist, and property or a thing must come into existence before a lien can attach to it. In the cases of assignments of future wages, no lien can attach to such wages until they are earned. If bankruptcy intervenes and discharges the debt, which is primary, and the assignment as security therefor is a mere incident, the debt is discharged by bankruptcy before the lien attempted to be created by the assignment of such future earned wages attaches. In other words, the debt is discharged before a lien is created. See Local Loan Co. v. Hunt, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230, 93 A.L.R. 195; In re Fellows, D.C., 43 F.2d 122; Burlingham v. Crouse, 228 U.S. 459, 33 S.Ct. 564, 57 L.Ed. 920, 46 L.R.A.,N.S., 148. In the case of an assignment of a life insurance policy, a lien attaches presently. There is a thing in existence, to-wit, the life insurance policy, which gives to the holder of such assignment a present property right. A life insurance policy is a contractual obligation, binding from the date of its execution, although its performance may be delayed until the happening of an event therein provided for. Life insurance policies are assignable, even to one having no insurable interest in the life of the insured. Grigsby v. Russell, 222 U.S. 149, 32 S.Ct. 58, 56 L.Ed. 133, 36 L.R.A.,N.S., 642, Ann.Cas.1913B, 863. In many states pledgees of life insurance policies have the right to exercise options contained in the policies, such as the option to surrender the same for cash. See Note 114 A.L.R. 775. In Mercer National Bank v. White's Executor et al., supra, the difference between assignments of future wages and an assignment of life insurance is discussed, and the distinction is clearly pointed out.

▬ Sec. 10943, O.S.1931, 42 Okl.St.Ann. § 8, is relied upon to establish the fact that the assignment of the insurance policies constitutes merely a contract for a lien upon future acquired property. The Statute permits an agreement to create a lien upon property not yet acquired by the party agreeing to give the lien, or not yet in existence, but in such cases the lien agreed for attaches from the time when the party agreeing to give it acquires an interest in the thing to the extent of such interest. This Statute applies to liens upon property not yet acquired, or not yet in existence. The policies of insurance were owned by Robinson at the time he assigned them, and were then in existence, although the sums payable thereon, in the event of death, were payable only upon the happening of such condition. The Statute is inapplicable, because the lien attached to

property in existence at the time the assignments were executed.

Another contention of plaintiff's is that the assignments of the life insurance policies covered only debts enforcible at the time the policies matured, and did not cover debts previously discharged in bankruptcy. This rule was apparently established by the Supreme Court of Wisconsin in Northwestern Mutual Life Insurance Co. v. Prochnow, 221 Wis. 45, 264 N.W. 827. See also, on motion for rehearing, 221 Wis. 45, 266 N.W. 210. The cited case is undoubtedly predicated upon the assumption that a discharge in bankruptcy destroys the debt, rather than renders such debt unenforcible. On rehearing, it is apparent that the decision is grounded upon the terms of the assignment and not upon any rule of law applicable to the effect of a discharge in bankruptcy. The assignment in the cited case is similar to the assignments in the instant case.

A case reaching a result contrary and opposed to the cited case is Champion v. Buckingham, 165 Mass. 76, 42 N.E. 498.

Judge Holmes, while on the Supreme Judicial Court of Massachusetts, in considering a case involving the Statute of Limitations, concluded that such Statute did not extinguish the debt. Townsend v. Tyndale, 165 Mass. 293, 43 N.E. 107, 52 Am.St.Rep. 513. See also, Conway v. Caswell, 121 Ga. 254, 48 S.E. 956, 2 Ann.Cas. 269; Bush v. Kansas City Life Insurance Co., Mo.Sup., 214 S.W. 175; Puckhaber v. Henry, 152 Cal. 419, 93 P. 114, 125 Am. St.Rep. 75, 14 Ann.Cas. 844; Manhattan Life Insurance Co. v. Hennessy, 5 Cir., 99 F. 64.

 Similarly, a discharge in bankruptcy does not extinguish the debt. Zavelo v. Reeves, 227 U.S. 625, 33 S.Ct. 365, 57 L. Ed. 676, Ann.Cas.1914D, 664; 8 C.J.S., Bankruptcy, § 559, page 1491; Remington on Bankruptcy, Sec. 3448.

The Northwestern Mutual Life Insurance Company v. Prochnow case, while very persuasive, is not controlling, and will not be followed, for the reason that the better view seems to be that bankruptcy does not extinguish the debt. It should be observed that the collateral form note executed by Robinson constituted a pledge of the policies separate and apart from the assignment of such policies, and the note was sufficiently broad to authorize the banks to have sold all of Robinson's interest or equity in the insurance policies at a pledge sale, in accordance with the Oklahoma Statutes, on default in payment, and could have purchased the policies and owned the same. See Central State Bank v. Edwards, 21 Tenn.App. 418, 111 S.W.2d 873; Hiscock v. Varick Bank of New York, 206 U.S. 28, 27 S.Ct. 681, 51 L.Ed. 945. To this extent, the assignment of the policies differ from the cited case.

 The next issue presented is with respect to the rent account of $1,332, which sum was retained by the bank from the funds paid on the insurance policies. The account was barred by the three-year statute of Limitations on and after April 25, 1936 (1931 O.S. § 101(2), 12 Okl.St.Ann. § 95, subd. 2, and any lien which the bank might have had by reason of the collateral form note, providing that the security pledged secured not only the sum specified therein but other indebtedness due the bank, was extinguished by the Oklahoma Statute (1931 O.S. § 10957, 42 Okl.St.Ann. § 23). The Statute expressly provides that a lien is extinguished by the mere lapse of the time within which, under the provisions of Civil Procedure, an action can be brought upon the principal obligation. The statute has been construed to apply to all liens. See Coakley v. Phelan, 179 Okl. 515, 66 P.2d 19; Bertram v. Moore, 160 Okl. 78, 15 P.2d 589; Rice v. Burgess, 124 Okl. 177, 254 P. 746. California, having a similar Statute to Oklahoma's, has held that although the pledgee is prevented from taking affirmative action to foreclose a pledge, still it is not required to deliver up any property pledged to it, and pledgee continues to have the right to retain possession of such property, or to collect upon pledged collateral until the borrowed debt is paid. See Puckhaber v. Henry, 152 Cal. 419, 93 P. 114, 125 Am.St.Rep. 75, 14 Ann. Cas. 844; Bridge v. Conn. Mutual Life Insurance Co., 167 Cal. 774, 141 P. 375; Lapique v. Walsh, 50 Cal.App. 82, 195 P. 296; Savings Union B. & T. Co. v. Crowley, 176 Cal. 543, 169 P. 67. See also Note 103 A.L.R. 430. The Oklahoma Statute plainly provides that the lien is extinguished in such cases, and the Supreme Court has adhered to such a rule, although no case involving assignments of life insurance policies has been drawn to my attention. The Statute of Oklahoma is controlling, rather than the construction placed by the California courts upon its Stat-

ute. The bank was, therefore, without right or authority to withhold the sum due it as rent, which debt had been barred by the Statute of Limitations.

■ The debt of the cross-petitioner, Moody, was secured by a pledge and junior assignment of the proceeds of the life insurance policies, and if any funds remain after payment of the valid claims of the banks, then the claim of Moody is entitled to payment from the proceeds of the insurance policies.

■ It is next urged by plaintiff that the defendants are estopped from asserting a lien against the policies in excess of $1,820.44, the amount represented by the note executed and delivered by Robinson subsequent to his discharge in bankruptcy. This contention is predicated upon the following: Failure of the banks to liquidate the lien which they had against the insurance policies subsequent to bankruptcy proceedings, acceptance from Robinson of renewal note in the sum of $1,820.44 after his discharge in bankruptcy, failure of the banks to pay the premiums upon the policies, and permitting and inducing Robinson to pay the premiums until his death. It is urged that such acts and conduct were consistent only with an intention that the banks were to have a lien on the proceeds of the policies to the extent of $1,-820.44. It is further insisted that Mrs. Robinson testified that she was advised by Mr. Moody that after deducting what is due the banks, there would be a sum around $4,000 for the estate. Mr. Moody disputed this testimony by saying that there would be some salvage in the insurance for plaintiff. This contention is not sound, for the reason that there is no evidence disclosing any representation or promise made by the banks to Mr. Robinson during his life time, which induced him to pay premiums on the life insurance policies. It was Robinson's duty to maintain the policies of insurance in force, and there is no basis for an estoppel by inducing a person to do what he is obligated to do. There is no evidence that Mr. Robinson relied upon any statement which induced him to pay any insurance premiums; neither is there any evidence that the plaintiff in the action changed her position or did any act in reliance upon any representation made by the defendants. There is no evidence of any conduct or action by the defendants which is inconsistent with the claims they are now asserting. The National

Bank of Tulsa is a going concern, and there is every reason why it should have required a new note from Robinson after his discharge in bankruptcy, as banks are criticized for carrying past due obligations. The same situation did not exist with respect to the Exchange National Bank, because it was in voluntary liquidation, and the demand note held by it was not detrimental to any of its interests. As noted above, there is no evidence of any action by the defendants which misled the plaintiff, and there is no basis for an estoppel.

■■ The final contention is that equity should aid plaintiff to recover the money paid to or retained by the defendants by mutual mistake of law or mutual mistake of facts, or inequitable or unconscionable circumstances which it is claimed constituted unjust enrichment of the defendants. There can be no doubt as to the general propositions of law that mutual mistake of fact or law will justify a court of equity in setting aside transactions. However, in the instant case there is no evidence of a mutual mistake of law or fact. The evidence shows that plaintiff engaged competent legal counsel in the administration of the estate of her deceased husband, and had the benefit of such counsel in her transactions with the defendants. Her deceased husband was likewise aided by the same competent attorney in his bankruptcy proceedings. Each of the contentions and propositions urged by plaintiff have been carefully considered, with the result that no mistake of law was apparently made by either the defendants or counsel advising plaintiff, and upon which she relied prior to the institution of this suit. There is no evidence of any mutual mistake of fact, as there is very little dispute in the facts, most of them having been stipulated by the parties.

The defendant banks contend that plaintiff is estopped by the voluntary payment made by her from recovering the same, and rely upon the rule announced in Oklahoma to the effect that money voluntarily paid, with full knowledge of all the facts under which it was demanded, cannot be recovered back upon the ground that payment was made under a misapprehension of the legal rights and obligations of the party paying. Hadley v. Farmers' National Bank, 125 Okl. 250, 257 P. 1101, 53 A.L.R. 943; American Surety Co. of New York v. Steen, 86 Okl. 252, 208 P. 212. It is unnecessary to apply the above

rule in the instant case, as it is determined that plaintiff is not entitled to her recovery of any sums.

Plaintiff also asserts that no claim was filed in the administration proceedings, but admits that if the defendants held valid liens they do not have to file claims in the County Court. She contends that funds could not be taken from the administratrix for liquidation of their security without the approval of the County Court. It has been held by the Supreme Court of Oklahoma that a pledgee of a life policy of insurance was entitled, after death of the pledgor, to foreclose the lien or pledge without filing a claim against the pledgor's estate, where no recourse against property of the estate other than that pledged was sought. Woofter v. Fourth National Bank of Tulsa, 182 Okl. 483, 78 P.2d 683. There was nothing for submission to the County Court in the Probate proceedings, as it was unnecessary to file a claim in such proceedings.

Plaintiff's bill should be dismissed, as she is not entitled to any recovery herein.

A decree may be drawn in accordance with this opinion.